UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DUSTIN MICHELLE, an individual,<br><br>            Plaintiff,<br><br>    vs.<br><br>SOUTH CORRECTIONAL ENTITY ("SCORE"), a Governmental Administrative Agency; SCORE JOHN DOES 1-10; NAPHCARE, INC., an Alabama Corporation; ELAINE SPERRY, an individual; JASON WIGGINS, an individual; MELANIE MENEAR, an individual; MARGARET MAINA, an individual; TRICIA WEBB, an individual; NAPHCARE JOHN DOES 1-10; KING COUNTY, a political subdivision of the State of Washington; and KING COUNTY JOHN DOES 1-10,<br><br>            Defendants. | NO. 2:21-cv-00140<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES**<br><br>**JURY DEMAND** |

COMES NOW the Plaintiff, by and through his undersigned attorneys, and alleges as follows:

## I.  INTRODUCTION

1.      This action arises out of the extended deprivation of medical care of Plaintiff Dustin Michelle ("Dustin") while he was an inmate at South Correctional Entity Jail ("SCORE").

2.      Shortly after Dustin's incarceration began, Dustin experienced worsening pain in

FIRST AMENDED COMPLAINT FOR DAMAGES - 1

**KRUTCH LINDELL BINGHAM JONES, P.S.**
3316 Fuhrman Ave E
Suite 250
Seattle, Washington 98102
TEL. 206.682.1505 • FAX 206.467.1823

his neck and displayed vital signs consistent with a worsening infection.  Over the next approximately two and a half weeks at SCORE, Dustin's symptoms worsened.

3.     Dustin complained regularly to corrections and medical personnel but was not taken seriously.  SCORE's corrections officers and/or NaphCare medical staff—who were supposed to be responsible for Dustin's well-being—called him a liar, accused him of faking his symptoms, and threatened to send him to "the hole" if he kept complaining.

4.     The cause of Dustin's symptoms was a rapidly spreading infection, which caused a massive abscess in his neck.  By the end of Dustin's incarceration, the infection was out of control.  The bacteria partially eroded his spine and sent Dustin's body into septic shock.  By the time Dustin arrived at the emergency room, shortly after his release from jail, he was moments from death; the infection was now "throwing clots" and numerous organ systems were already shutting down.  Dustin narrowly escaped with his life and suffered catastrophic injuries and permanent disabilities as a result of the lack of medical treatment.

5.     NaphCare and SCORE are in the business of cut-rate incarceration.  NaphCare is a for-profit corporation that provides medical services to jails and prisons nationwide and markets itself as a cheaper alternative to in-house medical departments.  Although SCORE is technically a governmental administrative agency, it provides contract jail services to numerous municipalities in a manner akin to a for-profit business.  As a result, SCORE and NaphCare operate under the perverse economic incentives of a for-profit jail.  SCORE and NaphCare cut corners and make staffing policies and medical decisions based on their financial interests—not the health of their inmates.

6.     Plaintiff brings this action under 42 U.S.C. §1983 for violations of the Eighth and Fourteenth Amendments to the United States Constitution.  Plaintiff also brings various state and common law claims.

## II.  JURISDICTION AND VENUE

7.     This Court has jurisdiction over Plaintiff's claims under the Eighth and

KRUTCH LINDELL BINGHAM JONES, P.S.
3316 Fuhrman Ave E
Suite 250
Seattle, Washington 98102
TEL. 206.682.1505 • FAX 206.467.1823

Fourteenth Amendments of the U.S. Constitution, 42 U.S.C. §§1983 and 1988, and 28 U.S.C. §§1331,1343, et seq.

8.      Plaintiff's state and federal claims arise from a common nucleus of operative facts. Therefore, this court has supplemental jurisdiction over the state claims pursuant to 28 U.S.C. §1367.

9.      Venue is proper under 28 U.S.C. § 1391(b), because a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in this district.

10.     Assignment to the Seattle Courthouse is proper under LCR 3(d) because a substantial part of the events and omissions giving rise to the claim occurred in King County.

### III.  PARTIES

**A.    Plaintiff**

11.     Plaintiff Dustin Michelle is a 39-year-old man, who is a Blackfoot tribal member and a resident of Auburn, Washington.

12.     Dustin's racial identity is mixed race/American Indian.[1]

13.     At the time of the acts and omissions described below, Dustin was an inmate at SCORE jail for pre- and post-conviction misdemeanor offenses.

**B.    Defendant SCORE**

14.     Defendant South Correctional Entity ("SCORE") is a governmental administrative agency established pursuant to RCW 39.34.030(3).

15.     SCORE's primary purpose is operating a jail in Des Moines, Washington. SCORE provides correctional services to its member cities, which include Auburn, Burien, Des Moines, Federal Way, Renton, SeaTac, and Tukwila, as well as providing contract services to

---

[1] The term "racial identity" is used herein as a cultural, rather than biological, concept. Most modern biologists and anthropologists do not recognize "race" as a biologically valid classification. However, the concept of "race" is commonly used by Americans to classify people based on subjective and culturally mandated criteria. Because these subjective classifications affect the biases of individuals, the concept of "race" is of practical and casual importance to this lawsuit. Implicit bias by medical professionals based on racial identity often leads to disparate pain management strategies and diagnoses. *See, e.g.*, Hall, William J et al. "Implicit Racial/Ethnic Bias Among Health Care Professionals and Its Influence on Health Care Outcomes: A Systematic Review." American journal of public health vol. 105,12 (2015): e60-76. doi:10.2105/AJPH.2015.302903

FIRST AMENDED COMPLAINT FOR DAMAGES - 3

1   numerous other governmental entities and agencies.

2       16.   SCORE's jail-for-hire model leads to a perverse financial incentive where cost-

3   savings are prioritized over human life.  Even though SCORE's ownership group is technically

4   comprised of government entities, these financial incentives are akin to those present in the for-

5   profit correctional facility model.

6       17.   Under the doctrine of *respondeat superior*, SCORE is liable for the conduct of its

7   employees, which at all relevant times was within the course and scope of their employment.

8       18.   At all relevant times, SCORE held persons in custody under the color of state law.

9   **C.    SCORE Employee Defendants**

10      19.   Defendants SCORE John Does 1-10 are collectively referred to as SCORE

11  Employee Defendants.

12      20.   SCORE Employee Defendants are individuals employed by SCORE to

13  administer, operate, and/or manage SCORE's jail facility.  At all relevant times, they were acting

14  within the course and scope of their employment and under color of state law.

15      21.   All are sued in their individual capacity.

16  **D.    Defendant NaphCare**

17      22.   Defendant NaphCare, Inc. ("NaphCare") is a foreign corporation existing under

18  the laws of the State of Alabama with its principal place of business in Vestavia Hills, Alabama.

19  NaphCare is registered to do business in the State of Washington.

20      23.   NaphCare does substantial and continuous business in the State of Washington,

21  including King County.

22      24.   During all times material to this lawsuit, SCORE contracted with NaphCare to

23  provide all facets of medical care, dental care, and mental health care for detainees.  This

24  included off-site hospital/physician network development, medical scheduling, and medical

25  record keeping.

26      25.   In providing medical care for inmates, NaphCare was acting under the color of

27

FIRST AMENDED COMPLAINT FOR DAMAGES - 4

**KRUTCH LINDELL BINGHAM JONES, P.S.**
3316 Fuhrman Ave E
Suite 250
Seattle, Washington 98102
TEL. 206.682.1505 • FAX 206.467.1823

1    state law.

2         26.    Under the doctrine of *respondeat superior*, NaphCare is liable for the conduct of

3    its employees, which at all relevant times was within the course and scope of their employment.

4    **E.    NaphCare Employee Defendants**

5         27.    The defendants listed in paragraphs 28-33 are collectively referred to as

6    "NaphCare Employee Defendants."  All are sued in their individual capacity.

7         28.    Defendant Licensed Practical Nurse Elaine Sperry ("LPN Sperry") is an

8    individual who is a resident of Washington State.  LPN Sperry is a nurse employed by Naphcare

9    and assigned to SCORE.  At all relevant times, she was acting within the course and scope of her

10   employment and under color of state law.

11        29.    Defendant Registered Nurse Jason Wiggins ("RN Wiggins") is an individual who

12   is a resident of Washington State.  RN Wiggins is a nurse employed by Naphcare and assigned to

13   SCORE.  At all relevant times, he was acting within the course and scope of his employment and

14   under color of state law.

15        30.    Defendant Registered Nurse Melanie Menear ("RN Menear") is an individual

16   who is a resident of Washington State.  RN Menear is a nurse employed by Naphcare and

17   assigned to SCORE.  At all relevant times, she was acting within the course and scope of her

18   employment and under color of state law.

19        31.    Defendant Licensed Practical Nurse Margaret Maina ("LPN Maina") is an

20   individual who is a resident of Washington State.  LPN Maina is a nurse employed by Naphcare

21   and assigned to SCORE.  At all relevant times, she was acting within the course and scope of her

22   employment and under color of state law.

23        32.    Defendant Registered Nurse Tricia Webb ("RN Webb") is an individual who is a

24   resident of Washington State.  RN Webb is a nurse employed by Naphcare and assigned to

25   SCORE.  At all relevant times, she was acting within the course and scope of her employment

26   and under color of state law.

27

**KRUTCH LINDELL BINGHAM JONES, P.S.**
3316 Fuhrman Ave E
Suite 250
Seattle, Washington 98102
TEL. 206.682.1505 • FAX 206.467.1823

33.     Defendants NaphCare John Does 1-10 are individuals employed by NaphCare to provide, design, or manage medical and/or mental health services at SCORE.  At all relevant times, they were acting within the course and scope of their employment and under color of state law.

34.     All are sued in their individual capacity.

**F.     Defendant King County**

35.     Defendant King County is a political subdivision of the State of Washington organized under the laws of the Washington, including Title 36 of the Revised Code of Washington.  The Department of Adult and Juvenile Detention ("DAJD") operates two adult detention facilities, one of which is the King County Correctional Facility located in Seattle. Under the doctrine of *respondeat superior*, DAJD is liable for the conduct of its employees, which at all relevant times was within the course and scope of their employment.

**G.     King County Employee Defendants**

36.     Defendants King County John Does 1-10 are collectively referred to as King County Employee Defendants.

37.     King County Employee Defendants are individuals employed by King County to provide, design, or manage medical and/or mental health services at the King County Jail or administer, operate, and/or manage the King County Jail.  At all relevant times, they were acting within the course and scope of their employment and under color of state law.

38.     All are sued in their individual capacity.

**H.     General Allegations Regarding Parties**

39.     The true names and identities of "John Doe" Defendants, whether individual, corporate, or otherwise, are unknown to Plaintiff at this time.  Plaintiff will amend this complaint to allege the true names and identities of said defendants, and the basis for said Defendants' liability to Plaintiff, when this information is ascertained.

40.     All pronouns and other indications of gender are meant to be nonspecific and

FIRST AMENDED COMPLAINT FOR DAMAGES - 6

**KRUTCH LINDELL BINGHAM JONES, P.S.**
3316 Fuhrman Ave E
Suite 250
Seattle, Washington 98102
TEL. 206.682.1505 • FAX 206.467.1823

1   interchangeable.

2                                    **IV.  FACTS**

3   **I.     Dustin's Incarceration at SCORE**

4          41.     Dustin was booked into SCORE jail on the evening of October 10, 2018.

5          42.     Shortly after his incarceration began, Dustin began experiencing neck pain.  As

6   time passed, the neck pain worsened.

7          43.     Although Dustin did not know it at the time, the pain was caused by a rapidly

8   spreading infection in his neck, which would nearly take his life in the coming weeks.

9          44.     Shortly after his arrival, NaphCare's medical personnel started observing

10  abnormal vital signs, such as low blood pressure and a high pulse, which are symptoms of a

11  severe infection.

12         45.     On October 11, 2018, NaphCare LPN Jenny Bowman noted that Dustin's

13  diastolic blood pressure was 60, an abnormally low number.  On that same day, she also noted a

14  resting heart rate of 123 beats per minute—a heart rate more typical for somebody engaging in

15  cardiovascular exercise.

16         46.     NaphCare's Corporate Clinical Auditor, Allison Wells, was aware of this note on

17  October 11, 2018.

18         47.     On October 15, 2018, LPN Bowman again noted a resting heart rate of 124.

19         48.     At 7:39pm October 16, 2018, Dustin submitted a written medical grievance (also

20  known as a "kite"), complaining of neck pain.  Having no medical training, Dustin did not know

21  what was causing this pain, but he speculated at the time that it was related to a car accident he

22  had many years ago and suggested he be provided with a neck brace.

23         49.     LPN Elaine Sperry responded at 11:47am October 17, 2018 by questioning

24  whether Dustin was actually in a car accident and advising him that "neck braces are no longer

25  recommended for car accidents."

26         50.     On the evening of October 20, 2018, Dustin fell onto the floor of his cell while

27

KRUTCH LINDELL BINGHAM JONES, P.S.
3316 Fuhrman Ave E
Suite 250
Seattle, Washington 98102
TEL. 206.682.1505 • FAX 206.467.1823

1  holding his neck and shoulder.

2  51.    When corrections officers responded, Dustin advised them of his ongoing neck

3  pain.

4  52.    RN Jason Wiggins observed Dustin after the fall.  Although RN Wiggins again

5  observed an abnormally high heart rate of 111 beats per minutes, and Dustin complained of

6  debilitating neck pain, RN Wiggins decided that Dustin was faking his condition.

7  53.    After the fall, RN Wiggins also made a note that Dustin was "now comfortable in

8  bed."

9  54.    Dustin was not comfortable and did not tell RN Wiggins as such.  Dustin told RN

10  Wiggins that he was in extreme discomfort and needed medical assistance.

11  55.    At approximately 7:38pm on October 21, 2018, Dustin again complained about

12  his neck to NaphCare Director of Jail Operations and Registered Nurse, Melanie Menear.  RN

13  Menear decided that because he was physically capable of carrying a dinner tray that he did not

14  have serious injuries.

15  56.    The ability to carry a single dinner tray is not an accepted diagnostic factor for

16  significant medical problems.

17  57.    Rather than facilitating treatment by a doctor or other provider qualified to make

18  diagnoses and prescribe treatment, RN Menear sent a Licensed Practical Nurse named Bruce to

19  assess Dustin.  Unlike a Registered Nurse, Licensed Practical Nurses are not qualified or legally

20  allowed to provide such an assessment.  Unsurprisingly, this LPN Bruce did not disagree with

21  RN Menear, who was his/her supervisor.

22  58.    At 7:47pm on October 22, 2018, Dustin submitted another medical grievance,

23  again requesting help for the unaddressed pain in his neck.

24  59.    At approximately 5:32am on October 23, 2018, Dustin again called for medical

25  help.  He explained to LPN Margaret Maina—and LPN Maina charted—that he could not

26  breathe, his neck was painful, and his throat was swollen.  LPN Maina deferred making any

27  decisions because Dustin  was already scheduled for a "sick call" later that day.At approximately

FIRST AMENDED COMPLAINT FOR DAMAGES - 8

KRUTCH LINDELL BINGHAM JONES, P.S.
3316 Fuhrman Ave E
Suite 250
Seattle, Washington 98102
TEL. 206.682.1505 • FAX 206.467.1823

1:17pm on October 23, 2018, Dustin reported to RN Tricia Webb—and RN Webb charted—that his neck still hurt, was worse than before.  He also asked her "Why is it spreading?"

60.     RN Webb did not provide a response to Dustin's inquiry.  In reality, Dustin felt the sensation of pain "spreading" throughout his body because the infection was in fact spreading throughout his body.

61.     Dustin asked RN Webb for extra mattresses to make his neck more comfortable.  This request was denied, and RN Webb instructed him to do stretching exercises instead.

62.     RN Webb believed the neck pain was related to a musculoskeletal injury.  This was an illogical conclusion for her to make because Dustin did not start to experience pain until many days after any potentially injurious event.  Additionally, this was also not a conclusion RN Webb was qualified to make on her own.

63.     At 5:38pm on October 23, 2018, LPN Sperry sent a response to Dustin's original October 16 medical grievance, stating that he had recently been seen for headaches so she "assume[ed] the problem has been addressed."

64.     At 7:03pm on October 24, 2018, E. Molina responded to Dustin's October 22 medical grievance asking if he wanted to see a sick call nurse and advising him that he would need to pay to do so.  This unresolved grievance was closed automatically on November 7, 2018, after Dustin was released.

65.     At least once during his incarceration when Dustin voiced his medical concerns, a SCORE corrections officer or NaphCare nurse threatened to send him to "the hole" if he kept complaining.  In this context, sending him to "the hole" was meant to threaten punitive solitary confinement.

66.     Dustin was released from SCORE jail on October 25, 2018 and transferred directly to the King County Jail in Seattle.

67.     During his incarceration at SCORE, Dustin never saw a doctor or nurse practitioner.

68.     Based on information and belief, NaphCare Does 1-10 were supervisors,

FIRST AMENDED COMPLAINT FOR DAMAGES - 9

**KRUTCH LINDELL BINGHAM JONES, P.S.**
3316 Fuhrman Ave E
Suite 250
Seattle, Washington 98102
TEL. 206.682.1505 • FAX 206.467.1823

administrators, medical doctors, osteopathic doctors, and/or nurse practitioners who were responsible for the provision of medical care to SCORE inmates.  Does 1-10 were also responsible for supervising the NaphCare nurses at SCORE.

69.     NaphCare Does 1-10 had actual or constructive knowledge of Dustin's objective and subjective symptoms—which were clearly caused by a significant medical condition—either through direct observation or secondhand information conveyed by the nurses under their supervision and ignored the symptoms.

70.     SCORE Does 1-10 were corrections officers who were responsible for monitoring the wellbeing of inmates at SCORE.

71.     SCORE Does 1-10 observed Dustin in acute medical distress and were aware that NaphCare personnel ignored his complaints and failed to provide medical care despite observing symptoms that were caused by a significant medical condition and obvious enough to be apparent to a layperson.  These symptoms include but are not limited to, complaints of pain and discomfort, limited range of motion, an inability to swallow, difficulty breathing, an inability to stand, and generalized confusion.

**J.      SCORE, SCORE Employee Defendants, NaphCare, and NaphCare Employee Defendants failed to provide treatment for Dustin**

72.     SCORE, SCORE Employee Defendants, NaphCare, and NaphCare Employee Defendants failed to conduct an adequate clinical assessment or medical treatment.

73.     Dustin needed acute inpatient-level medical care.  SCORE and NaphCare were unable to provide that care and he was not transferred to an adequate medical facility.

74.     NaphCare Employee Defendants and SCORE Employee Defendants were not aware of, chose not to follow, and/or were improperly trained on SCORE's and NaphCare's existing policies and procedures.  These omissions are described in further detail below.

**K.      SCORE and NaphCare Were on Notice of the Potential Harm Caused by their Deficient Medical Treatment Practices**

75.     SCORE and NaphCare were on notice at the time of Dustin's incarceration of the

FIRST AMENDED COMPLAINT FOR DAMAGES - 10

KRUTCH LINDELL BINGHAM JONES, P.S.
3316 Fuhrman Ave E
Suite 250
Seattle, Washington 98102
TEL. 206.682.1505 • FAX 206.467.1823

1   potential for constitutional violations enabled by their deficient practices, training, and

2   supervision, due to previous specific incidents involving SCORE and/or NaphCare, including but

3   not limited to the following:

    a.    NaphCare has a dangerously high turnover rate, which creates a culture of
unfamiliarity and confusion.  The high turnover rate was confirmed and
acknowledged by DON Tambe and RN Villacorta in a 2017 interview.

    b.    A 2017 NCCHC Resources, Inc. ("NRI") audit of the Washoe County jail
in Nevada identified numerous problems with the manner in which
NaphCare conducts intake assessments for medical and mental health
issues.  These problems included the manner in which the assessments
were conducted, the time it took to conduct assessments, and the
sufficiency of training related to diagnosing mental health issues.  The
NRI audit revealed many of the same NaphCare staffing issues present at
SCORE, which contributed to or caused the deprivation of Dustin's
constitutional rights.

16       76.    Previous similar incidents involving NaphCare and SCORE include but are not

17   limited to the following:

    a.    In late 2017, a female inmate was booked into SCORE while suffering
from significant medical and psychological problems.  The inmate was
ignored for four days, while SCORE and NaphCare personnel watched her
medical condition deteriorate.  The inmate died before NaphCare made
any legitimate attempts at diagnosing her condition.  Poor monitoring and
the failure to obtain specialized medical treatment also contributed to
SCORE's and NaphCare's employees' deliberate indifference to Dustin's
serious medical need.

    b.    In 2016, Bryan Monnin was booked into the Spokane County Jail with a
broken arm.  Due to NaphCare's internal protocols meant to cut costs, Mr.

KRUTCH LINDELL BINGHAM JONES, P.S.
3316 Fuhrman Ave E
Suite 250
Seattle, Washington 98102
TEL. 206.682.1505 • FAX 206.467.1823

1       Monnin went over a month before receiving appropriate treatment.

2       Similar cost-cutting incentives—related to increased costs that

3       SCORE/NaphCare would bear if Dustin was transported to an outside

4       facility—also delayed Dustin's treatment and contributed to constitutional

5       violations.

6     c.    In 2017, Inmate Layla Abdus Salaam suffered a critical medical issue that

7       SCORE staff did not notice for over an hour.  A nurse also falsified

8       treatment records, which deprived Ms. Salaam of needed medicine and

9       contributed to her death.  NaphCare's death report for Ms. Salaam also

10      points out the poor communication and slow booking process (arrived at

11      16:32 on 7/31/17 and booked at 09:25 on 8/1/17) and poor communication

12      between medical staff and problems that led to Ms. Salaam's death.  The

13      nurse in question also implicitly acknowledged that inadequate staffing

14      and management affected her performance.  Poor communication and

15      inadequate staffing also contributed to SCORE's and NaphCare's

16      employees' deliberate indifference to Dustin's serious medical need.

17    d.    In 2015, Travis Stark suffered what appeared to be a seizure in the video

18      courtroom area of SCORE.  Travis Stark was seen by SCORE's nurses,

19      but he was never seen by a doctor or transported to a hospital for

20      evaluation.  He never received medical treatment and died alone in his cell

21      approximately five hours later.  Poor monitoring and the failure to obtain

22      specialized medical treatment also contributed to SCORE's and

23      NaphCare's employees' deliberate indifference to Dustin's serious

24      medical need.

25    e.    In 2015, Matthew Smith died from sepsis caused by complications related

26      to Crohn's disease in Pierce County, Washington, under NaphCare's care.

27      Mr. Smith suffered from continuous diarrhea and vomiting for an

KRUTCH LINDELL BINGHAM JONES, P.S.
3316 Fuhrman Ave E
Suite 250
Seattle, Washington 98102
TEL. 206.682.1505 • FAX 206.467.1823

1    extended period of time, and then was found lying on the floor in obvious

2    medical distress while the infection spread.  Despite understanding the

3    severity of the situation, NaphCare did not facilitate transport to a hospital

4    for approximately seven hours.  As a result of the delay, he suffered and

5    died.  NaphCare had insufficient policies and procedures in place to

6    facilitate emergency medical treatment.  Similar to Dustin's case,

7    NaphCare understood the dire nature of the situation but took no urgent

8    action.  Poor communication procedures and deficiencies in training and

9    customs related to the provision of emergency medical treatment

10   contributed to SCORE's and NaphCare's employees' deliberate

11   indifference to Dustin's serious medical need.

12       f.    In 2015, Jamycheal Mitchell died from starvation and neglect in Hampton

13            Roads, Virginia, under NaphCare's care.  Mr. Mitchell suffered from

14            severe mental health problems and was unable to care for himself as a

15            result of his mental health problems.  He was routinely not fed or did not

16            eat and lost significant weight before succumbing to medical

17            complications related to starvation.  Despite the fact that NaphCare

18            personnel regularly observed Mr. Mitchell wasting away, insufficient

19            policies and procedures were in place to address inmates who were

20            unwilling or unable to eat.  NaphCare also lacked sufficient policies and

21            procedures to address Mr. Mitchell's inability to engage in medical

22            treatment.  As a result, the treatment never occurred.  The United States

23            Department of Justice issued a report that addressed Mr. Mitchell's

24            inhumane confinement.  Deficient training and customs related to the

25            tracking and provision of food to disabled inmates also contributed to

26            SCORE's and NaphCare's employees' deliberate indifference to Dustin's

27            serious medical need and also the depravation of the minimum necessities

**KRUTCH LINDELL BINGHAM JONES, P.S.**
3316 Fuhrman Ave E
Suite 250
Seattle, Washington 98102
TEL. 206.682.1505 • FAX 206.467.1823

FIRST AMENDED COMPLAINT FOR DAMAGES - 13

1    of civilized life.

2    g.    In 2011, Gregory Cheek died of an untreated bacterial infection in Nuces

3          County, Texas, under NaphCare's care. Mr. Cheek suffered from mental

4          health problems, including acute psychosis, that prevented him from

5          expressing his medical needs, so NaphCare employees simply ignored the

6          obvious medical conditions that eventually proved fatal.  Deficient

7          training and customs related to internal communication and providing

8          emergency medical treatment to mentally ill inmates also contributed to

9          SCORE's and NaphCare's employees' deliberate indifference to Dustin's

10         serious medical need.

11   h.    In 2011, Justin Stark died from complications from mononucleosis in

12         Hamilton County, Ohio, under NaphCare's care.  Mr. Stark suffered from

13         obviously apparent physical symptoms—including vomiting—but due in

14         part to NaphCare's insufficient policies and procedures, his symptoms

15         became fatal.  Deficiencies in training and customs relating to welfare

16         checks and emergency treatment also contributed to SCORE's and

17         NaphCare's employees' deliberate indifference to Dustin's serious

18         medical need.

19   i.    In 2016, Calvin Clark died while supposedly under medical supervision

20         while in custody at SCORE.  Mr. Clark was elderly and a known diabetic.

21         Other inmates observed that he was obviously unwell and possibly going

22         through alcohol withdrawal.  One inmate described him as "hurting" and

23         "suffering" before the medical event that led to his death. Deficiencies in

24         training and customs relating to welfare checks and emergency treatment

25         also contributed to SCORE's and NaphCare's employees' deliberate

26         indifference to Dustin's serious medical need.

27   j.    In April of 2019, Daniel Khan died while in solitary confinement at

FIRST AMENDED COMPLAINT FOR DAMAGES - 14

SCORE.  Mr. Khan experienced severe withdrawal symptoms, complained of abdominal pain, and laid naked on the floor for an extended period of time before he stopped breathing and died.  Deficiencies in training and customs relating to emergency treatment also contributed to SCORE's and NaphCare's employees' deliberate indifference to Dustin's serious medical need.

   k. In September of 2019, a female inmate died while in solitary confinement at SCORE.  It is believed, and therefore alleged, that this inmate was either mentally ill or suffering from withdrawal symptoms and died due to a lack of medical attention. Deficiencies in training and customs relating to emergency treatment also contributed to SCORE's and NaphCare's employees' deliberate indifference to Dustin's serious medical need.

77. Based on the above described incidents, and others, SCORE and NaphCare were well aware of numerous deficiencies in the manner in which they provided medical care, including but not limited to: inadequate staffing levels, delayed and inadequate medical evaluations, and the failure to staff qualified medical providers (physicians and nurse practitioners).  Dustin's neglect and resulting injuries were caused in part by materially similar omissions.

## L. Dustin's incarceration at the King County Jail

78. Dustin arrived at the King County Jail on the evening of October 25, 2018.

79. At the King County Jail, Dustin immediately and repeatedly complained to corrections officers and jail medical personnel about his neck pain.

80. Lauren Robinson, RN, observed Dustin on the morning of October 26, 2018.  RN Robinson noted severe neck pain which Dustin speculated was related to his arrest.  RN Robinson noted an abnormally high resting heart rate, but also noted that Dustin did not see a medical provider for his entire stay at SCORE.

81. It is believed and therefore alleged that the lack of medical treatment or diagnostic

KRUTCH LINDELL BINGHAM JONES, P.S.
3316 Fuhrman Ave E
Suite 250
Seattle, Washington 98102
TEL. 206.682.1505 • FAX 206.467.1823

efforts at SCORE, and the lack of information shared by SCORE with King County, made it more difficult for King County medical personnel to diagnose Dustin's condition.

82.     Roger Higgs, MD observed Dustin on October 27, 2018.  He noted that Dustin was grimacing in pain, holding his head rigidly in a forward direction, reported "extreme tenderness to very light palpation," and reported muscles that were rigid on palpation.

83.     Muscle rigidity is a common symptom of severe infection.

84.     Dr. Higgs was also apparently untroubled by Dustin's extraordinarily high pulse of 127.

85.     Although Dustin speculated that his pain was caused by either an old auto accident or a rough arrest, Dr. Higgs did not believe the symptoms were consistent with an acute injury due to the delayed onset.

86.     Dr. Higgs speculated that the pain was "probably secondary to muscle spasm secondary to anxiety."  However, Dr. Higgs also noted the possibility that Dustin could be suffering from a far more significant condition such as a malignant neoplasm in his neck.

87.     Based on his extremely high pulse, muscle rigidity, and the fact that an acute musculoskeletal injury had already been ruled out, any reasonable medical provider would have ordered further diagnostic procedures including but not limited to radiography and standard lab tests.

88.     A CT scan or X-ray at this time would have shown a massive abscess where the infection was hollowing out Dustin's spine.

89.     A blood test would have shown a number of different abnormalities consistent with a severe infection that could cause death or permanent disability.

90.     Dr. Higgs prescribed ibuprofen and ice—treatment typically prescribed for an acute musculoskeletal injury—even though he ruled out an acute musculoskeletal injury.

91.     At some point during his incarceration at the King County Jail, the area around Dustin's right eye became severely infected and swollen.  The eye swelling was extremely obvious.

KRUTCH LINDELL BINGHAM JONES, P.S.
3316 Fuhrman Ave E
Suite 250
Seattle, Washington 98102
TEL. 206.682.1505 • FAX 206.467.1823

92.     A swollen eye not precipitated by an impact is a commonly known sign of infection.

93.     It is believed and therefore alleged that corrections officers observed but ignored the swelling around Dustin's eye.

94.     Dustin was released from the King County Jail on the evening of October 29, 2018.

**M.   General allegations regarding Dustin's medical condition**

95.     A reasonably competent medical provider would have diagnosed Dustin's infection early in his incarceration at SCORE or any time thereafter.

96.     Due to the nature of Dustin's infection, the longer Dustin went without appropriate treatment the worse it became.  Therefore, each and every delay contributed to his current morbidity.

97.     If Dustin received appropriate treatment earlier in his incarceration at SCORE, he would have required minimal medical treatment and made a quick and complete recovery.

## V.  LIABILITY

### FIRST CLAIM FOR RELIEF
### Common Law Negligence
### *Against SCORE, SCORE Employee Defendants, NaphCare, and*
### *NaphCare Employee Defendants*

98.     Dustin was held in custody by SCORE and the SCORE Employee Defendants with the contractual assistance of NaphCare and NaphCare Employee Defendants.  Once Dustin was in custody of SCORE—and therefore deprived of liberty and the ability to care for himself—a special relationship existed and the Defendants had an affirmative duty to protect Dustin and facilitate or provide him with adequate medical care and/or nursing care.  This duty was non-delegable and applicable to both SCORE and NaphCare while Dustin was in the custody of SCORE,

99.     SCORE, SCORE Employee Defendants, NaphCare, and NaphCare Employee Defendants were negligently, deliberately, and recklessly indifferent to Dustin's serious medical

KRUTCH LINDELL BINGHAM JONES, P.S.
3316 Fuhrman Ave E
Suite 250
Seattle, Washington 98102
TEL. 206.682.1505 • FAX 206.467.1823

1   needs.

2   100.    The nursing and medical care provided by SCORE, SCORE Employee

3   Defendants, NaphCare, and NaphCare Employee Defendants—or the lack thereof—was below

4   the standard of care expected of the average, competent, provider in the class that the providers

5   belonged and in the same or similar circumstances.

6   101.    SCORE and NaphCare failed to institute policies, procedures, and training that

7   were necessary to assure the safety of its inmates.  These omissions materially contributed to the

8   errors and omissions of SCORE's and NaphCare's employees.

9   102.    SCORE and NaphCare failed to train their employees in a manner necessary to

10   assure the safety of its inmates, and SCORE and NaphCare had notice that their deficient training

11   could have potentially catastrophic effects for inmates.  These omissions materially contributed

12   to the errors and omissions of SCORE's and NaphCare's employees.

13   103.    The above described actions and omissions were negligent, grossly negligent,

14   reckless, and malicious and breached SCORE's, SCORE Employee Defendants', NaphCare's,

15   and NaphCare Employee Defendants' duties to Dustin.

16   104.    SCORE had actual or constructive notice of NaphCare's history of substandard

17   medical care, in custody deaths, and constitutional violations and was negligent in its hiring of

18   NaphCare.

19   105.    The above described acts and omissions were a proximate cause of Plaintiff's

20   injuries and damages.

## SECOND CLAIM FOR RELIEF
**Civil Rights Claim for Cruel and Unusual Punishment and Denial, Delay,
and Withholding of Medical Care**
***Against SCORE Employee Defendants***

24   106.    42 U.S. §1983 and the Eighth and Fourteenth Amendments to the U.S.

25   Constitution protect a detainee's right to be free from cruel and unusual punishment, including

26   the deprivation of minimal civilized necessities.

27   107.    SCORE Employee Defendants were deliberately and recklessly indifferent to

**KRUTCH LINDELL BINGHAM JONES, P.S.**
3316 Fuhrman Ave E
Suite 250
Seattle, Washington 98102
TEL. 206.682.1505 • FAX 206.467.1823

Dustin's serious medical needs in violation of Dustin's Eighth and Fourteenth Amendment rights.

108.     These acts and omissions conducted by SCORE Employee Defendants were conducted within the scope of their employment with SCORE and under the color of law.

### THIRD CLAIM FOR RELIEF
**Civil Rights Claim for Cruel and Unusual Punishment and Denial, Delay, and Withholding of Medical Care**
***Against SCORE***

109.     42 U.S. §1983 and the Eighth and Fourteenth Amendments to the U.S. Constitution protect a detainee's right to be free from cruel and unusual punishment, including the deprivation of minimal civilized necessities.

110.     SCORE's insufficient policies, procedures, and training constitute deliberate indifference to the rights of SCORE inmates.

111.     These acts and omissions were conducted under the color of law.

### FOURTH CLAIM FOR RELIEF
**Civil Rights Claim for Cruel and Unusual Punishment and Denial, Delay, and Withholding of Medical Care**
***Against NaphCare Employee Defendants***

112.     42 U.S. §1983 and the Eighth and Fourteenth Amendments to the U.S. Constitution protect a detainee's right to be free from cruel and unusual punishment, including the deprivation of minimal civilized necessities.

113.     NaphCare Employee Defendants were deliberately and recklessly indifferent to Dustin's serious medical needs in violation of Dustin's Eighth and Fourteenth Amendment rights and deprived him of minimal civilized necessities.

114.     These acts and omissions conducted by NaphCare Employee defendants were conducted within the scope of their employment with NaphCare and under the color of law.

### FIFTH CLAIM FOR RELIEF
**Civil Rights Claim for Cruel and Unusual Punishment and Denial, Delay, and Withholding of Medical Care**
***Against NaphCare***

KRUTCH LINDELL BINGHAM JONES, P.S.
3316 Fuhrman Ave E
Suite 250
Seattle, Washington 98102
TEL. 206.682.1505 • FAX 206.467.1823

115.  42 U.S. §1983 and the Eighth and Fourteenth Amendments to the U.S. Constitution protect a detainee's right to be free from cruel and unusual punishment, including the deprivation of minimal civilized necessities.

116.  NaphCare's insufficient policies, procedures, and training constitute deliberate indifference to the rights of SCORE inmates.

117.  These acts and omissions were conducted under the color of law.

### SIXTH CLAIM FOR RELIEF
### Common Law Negligence
### *Against King County and King County Employee Defendants*

118.  Dustin was held in custody by King County and the King County Employee Defendants.  Once Dustin was in custody at the King County jail—and therefore deprived of liberty and the ability to care for himself—a special relationship existed and the defendants had an affirmative duty to protect Dustin and facilitate or provide him with adequate medical care, and/or nursing care.  This duty was non-delegable and applicable to King County while in the custody of King County.

119.  King County and King County Employee Defendants were negligently, deliberately, and recklessly indifferent to Dustin's serious medical needs.

120.  The nursing and medical care provided by King County, and King County Employee Defendants—or the lack thereof—was below the standard of care expected of the average, competent, provider in the class that the providers belonged and in the same or similar circumstances.

121.  King County failed to institute policies, procedures, and training that was necessary to assure the safety of its inmates.  These omissions materially contributed to the errors and omissions of King County's employees.

122.  King County failed to train its employees in a manner necessary to assure the safety of its inmates, and King County had notice that its deficient training could have potentially

FIRST AMENDED COMPLAINT FOR DAMAGES - 20

KRUTCH LINDELL BINGHAM JONES, P.S.
3316 Fuhrman Ave E
Suite 250
Seattle, Washington 98102
TEL. 206.682.1505 • FAX 206.467.1823

1  catastrophic effects for inmates.  These omissions materially contributed to the errors and

2  omissions of King County's employees.

3      123.    The above described actions and omissions were negligent, grossly negligent,

4  reckless, and malicious, and breached King County's and King County Employee Defendants'

5  duties to Dustin.

6      124.    The above described acts and omissions were a proximate cause of Plaintiff's

7  injuries and damages.

8                          **VI.  JOINT LIABILITY**

9      125.    Dustin is without fault for the incidents that form the basis for this lawsuit and

10 therefore Defendants are jointly and severally liable to Plaintiffs for their conduct.   Further,

11 Defendants were acting in concert and/or acting as agents or servants of each other.

12                          **VII.  DAMAGES**

13     126.    The above described acts and omissions were a proximate cause of Plaintiff's

14 damages, and entitle Plaintiff to monetary relief including compensatory damages, punitive

15 damages, and attorneys' fees and costs.

16     127.    As a direct and proximate result of the aforesaid acts and omissions, and tortious

17 and constitutionally violative conduct of Defendants, Plaintiff sustained severe and permanent

18 physical and mental injuries, and has suffered, and will continue to suffer in the future, injuries

19 and damages that include, but are not limited to, mental and physical pain and suffering; mental

20 and emotional pain, suffering, anguish and distress; loss of ability to enjoy life; disability; wage

21 loss and total destruction of wage earning capacity; expenses for medical care, medications,

22 surgery, therapy and related expenses, and such further injuries and damages as will be proven at

23 trial.

24     128.    This action is brought pursuant to 42 U.S.C. §1983 and §1988, and Plaintiff is

25 therefore entitled to all compensatory damages, punitive damages, costs, and attorneys' fees

26 allowed under federal and state law.

27

FIRST AMENDED COMPLAINT FOR DAMAGES - 21

KRUTCH LINDELL BINGHAM JONES, P.S.
3316 Fuhrman Ave E
Suite 250
Seattle, Washington 98102
TEL. 206.682.1505 • FAX 206.467.1823

## VIII.  JURY DEMAND

129.    Plaintiff hereby requests a jury trial in this matter.

## IX.  COMPLIANCE WITH CLAIM FILING STATUTES

130.    Plaintiff and his counsel have fully complied with RCW Ch. 4.92, as applicable, to bring this action against SCORE.

131.    On June 5, 2020, Plaintiff's counsel requested that SCORE's in-house counsel voluntarily accept service of a tort claim form.

132.    On June 9, 2020, SCORE's general counsel responded affirmatively and invited Plaintiff's counsel to send the tort claim form via email.

133.    SCORE's insurer sent Plaintiff's counsel a letter dated June 12, 2020, acknowledging receipt of the tort claim form.

134.    More than 60 days have elapsed since filing of the claim, which has not been accepted by the SCORE Defendants.

135.    Plaintiff and his counsel have fully complied with RCW Ch. 4.92, as applicable, to bring this action against King County.

136.    On August 25, 2020, Plaintiff's counsel served a tort claim form on King County in accordance with the COVID 19 service instructions published on the Clerk of Council and Department of Risk Management websites.

137.    More than 60 days have elapsed since filing of the claim, which has not been accepted by King County.

## X.  PLAINTIFF DECLINES TO SUBMIT THIS DISPUTE TO ARBITRATION

138.    To the extent any of the tort claims pled herein—against known or presently unknown defendants—implicate RCW Ch. 7.70A, Plaintiff declines to submit this case to arbitration.

## XI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff having stated his case, prays for judgment against the above-

KRUTCH LINDELL BINGHAM JONES, P.S.
3316 Fuhrman Ave E
Suite 250
Seattle, Washington 98102
TEL. 206.682.1505 • FAX 206.467.1823

named Defendants, as follows:

A.      For Plaintiff's general damages for physical pain and suffering, mental and emotional distress, anguish, anxiety, fear of impending doom, and for Plaintiff's destruction of earning capacity.

B.      For Plaintiff's special damages in an amount to be proven at the time of trial for all medical expenses past and future, all lost earnings past and future, and all other recoverable special damages as are just arising from the injuries to Plaintiff.

C.      For punitive damages against Defendants sufficient to punish them and to deter further wrongdoing;

D.      For all other general and special damages recoverable under Washington state law, or any other law deemed applicable by the Court;

E.      For pre- and post-judgment interest;

F.      The maximum amount of statutory damages allowed, pursuant to RCW 42.56.550(4);

G.      For costs, including reasonable attorney's fees, allowed by law; and

H.      For such other further relief as the Court deems just and equitable.

KRUTCH LINDELL BINGHAM JONES, P.S.
3316 Fuhrman Ave E
Suite 250
Seattle, Washington 98102
TEL. 206.682.1505 • FAX 206.467.1823

1    RESPECTFULLY SUBMITTED AND DATED this 19th day of May, 2021.

2                                          KRUTCH LINDELL BINGHAM JONES, P.S.

3
                                           By: */s/ J. Nathan Bingham*
4                                              J. Nathan Bingham, WSBA #46325
                                               Email: jnb@krutchlindell.com
5
                                           By: */s/ James T. Anderson*
6                                              James T. Anderson, WSBA #40494
                                               Email: jta@krutchlindell.com
7
8                                          By: */s/ Jeffrey C. Jones*
                                               Jeffrey C. Jones, WSBA #7670
9                                              Email: jcj@krutchlindell.com

10                                         3316 Fuhrman Ave E, Suite 250
                                           Seattle, Washington 98102
11                                         Telephone: (206) 682-1505
                                           Facsimile: (206) 467-1823
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

FIRST AMENDED COMPLAINT FOR DAMAGES - 24