UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DUSTIN MICHELLE, | CASE NO. 2:21-cv-00140-JHC |
| Plaintiff, | ORDER |
| v. | |
| SOUTH CORRECTIONAL ENTITY, et al., | |
| Defendants. | |

**I.**

**INTRODUCTION**

This matter comes before the Court on Plaintiff's Motion for Partial Summary Judgment (Dkt. # 76) and Defendant's Motion to Strike (Dkt. # 83 at Section D). Having reviewed the submissions in support of and in opposition to the motions, the applicable law, and the case file, the Court hereby GRANTS Plaintiff's motion and DENIES without prejudice Defendant's motion.

ORDER - 1

## II.

### BACKGROUND

This case arises out of injuries Plaintiff Dustin Michelle suffered because of a serious neck infection that went undiagnosed and untreated during his incarceration at South Correctional Entity Jail ("SCORE") and King County Jail. Dkt. # 65 at 7–22. Plaintiff brought several causes of action against SCORE, SCORE's medical contractor NaphCare, Inc., King County, and numerous individual defendants. *Id.* As of the filing of this Order, the only defendants who remain parties are King County and King County John Does 1–10. *See* Dkts. ## 31, 90, 97 (orders dismissing SCORE, NaphCare, and the SCORE/NaphCare Employee Defendants).

Mr. Michelle was incarcerated at King County Jail from October 25 to October 29, 2018. Dkt. # 65 at 15. During his intake screening shortly after he was first booked, he reported severe neck pain. Dkt. # 84–1 at 2. He explained that he had experienced and reported this pain during his previous incarceration at SCORE (Mr. Michelle had been incarcerated there from October 10 to October 25, 2018) but that he was only given ibuprofen and did not see a provider there. *Id*. Mr. Michelle theorized that the pain could be related to injuries he sustained during his arrest 16 days earlier. *Id.* During the same intake screening, Mr. Michelle also disclosed that he was a heroin user. *Id.* The Registered Nurse who performed the intake screening, Lauren Robinson, flagged the case as requiring a "Priority 1" medical appointment and spoke with an on-call physician named Elise Duggan who agreed. Dkt. # 77–6 at 4–6. Robinson expected that the appointment would happen the same day, but Mr. Michelle did not see a physician until the day after, October 27, 2018. Dkt. # 84–1 at 6.

Mr. Michelle saw Dr. Higgs on October 27, 2018. *Id*. During this visit, Mr. Michelle reported the same neck pain. *Id.* He speculated that the pain could be caused by either a car

accident several years ago that left him with multiple injuries or his recent arrest. *Id.* at 6. He explained that the pain began about two days after his arrest, and that it worsened over the following days. *Id.* Dr. Higgs recorded a resting heartrate of 127. *Id.* at 7. He also noted that Mr. Michelle "grimace[d] in pain when sitting down or climbing up on [the] exam table," that he was "holding [his] head rigidly in a forward direction," that his neck muscles "appear[ed] to be rigid on palp[i]tation," and that he had very limited range of motion in his neck. *Id.* at 6. Dr. Higgs's notes from the visit state that Mr. Michelle's pain was "probably secondary to muscle spasm secondary to anxiety[;] highly doubt related to acute injury since its onset was days later." *Id.* Dr. Higgs admitted in his deposition that at the time, he believed Mr. Michelle was engaging in "exaggerated pain behavior" for the purpose of some secondary gain like obtaining an extra blanket or building documentation of injuries for the purposes of a lawsuit. Dkt. # 77–7 at 4–5. Dr. Higgs did not diagnose Mr. Michelle with, or treat him for, an infection. Dkt. # 84–1 at 6; *see generally* Dkt. # 77–7.

Two days after Mr. Michelle was released from King County Jail, he was rushed to the emergency department at MultiCare Auburn Medical Center, where doctors discovered that he was experiencing multiorgan failure (including a stroke and respiratory failure) associated with septic shock caused by an infection in his neck. Dkts. ## 78 at 8, 79–1 at 13. He was immediately transferred to Harborview Medical Center, a Level 1 Trauma Care Center. Dkt. # 79–1 at 14. The doctors at Harborview were fortunately able to save Mr. Michelle's life but he was left with severe and permanent injuries. *See, e.g.*, Dkt. # 79–1 at 14–15.

At no time during his incarceration at King County Jail—including during his intake screening and during his October 27, 2018, visit with Dr. Higgs—did Mr. Michelle tell medical staff that, in the days just before his arrest, he had injected the contents of a used syringe into his neck. Dkt. # 78–1 at 6–7; *see generally* Dkts. ## 77–6, 77–7.

ORDER - 3

Plaintiff brings a common law negligence claim against King County and King County John Does 1–10, arguing that they provided inadequate medical care during his incarceration. Dkt. # 65. In its Answer, Defendant King County asserts the affirmative defense of contributory fault. Dkt. # 74 at 16. Plaintiff now moves for partial summary judgment, arguing that the Court should preclude Defendants from asserting this affirmative defense, since it is not supported by any evidence in the record. Dkt. # 76. Specifically, Plaintiff argues that (1) his drug use prior to his incarceration does not make him contributorily at fault, and (2) there is no admissible evidence that he provided inaccurate information about his drug use to King County medical staff. *Id.* at 18–23. King County opposes the motion and moves to strike portions of the record from consideration as they relate to Plaintiff's motion. Dkt. # 83.

## III.

### DISCUSSION

1. Plaintiff's Motion for Summary Judgment

    a. Summary Judgment Standard

Summary judgment is proper only if the evidence, when viewed in the light most favorable to the non-moving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007). The moving party bears the burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Richards v. Neilsen Freight Lines,* 810 F.2d 898, 902 (9th Cir. 1987). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at

ORDER - 4

trial." *Celotex Corp.,* 477 U.S. at 322.  Because contributory fault is an affirmative defense,[1] Defendants carry the burden of proof at trial.  Fed. R. Civ. P. 8(c).  Therefore, they must make a showing that there are significant factual issues as to this affirmative defense that should be tried. *United States v. Carter,* 906 F.2d 1375, 1377 (9th Cir. 1990).  Summary judgment must be granted if there is no evidence in the record to support a theory of contributory fault.  *Id; see also Celotex Corp.,* 477 U.S. at 326.

        b.   Contributory Fault as to Plaintiff's Drug Use

The Court concludes that Defendants may not assert the affirmative defense of contributory fault as it relates to Mr. Michelle's drug use in general or his injection of his neck with a used needle in the days prior to his arrest.  Defendants seem to concede on this latter ground in their briefing.  *See* Dkt. # 83 at 7 ("King County does not claim Michelle was contributorily negligent simply because he injected his neck with a dirty, used needle").  A healthcare provider may not avoid liability for negligent treatment by asserting that the patient's pre-treatment actions contributed to their injuries.  *See, e.g.*, *Son v. Ashland Cmty. Healthcare Servs.*, 239 Or. App. 495, 509, 244 P.3d 835 (Or. Ct. App. 2010) ("[G]iven that the focus in medical malpractice claims is on the negligent acts or omissions of the medical provider, it is inappropriate to use the patient's negligence that led to the condition that required medical attention to excuse the defendants' failure to meet the accepted standard of care"); *Harb v. City of Bakersfield*, 233 Cal. App. 4th 606, 633, 183 Cal. Rptr. 3d 59 (Cal. Ct. App. 2015) (a plaintiff's comparative fault should not be presented to the jury when the plaintiff's allegedly negligent conduct occurred before the first responders arrived at the scene of the accident"); *see*

---

[1] "In an action based on fault seeking to recover damages for injury or death to person or harm to property, any contributory fault chargeable to the claimant diminishes proportionately the amount awarded as compensatory damages for an injury attributable to the claimant's contributory fault, but does not bar recovery." RCW 4.22.005. A defendant may therefore assert the contributory fault of a plaintiff as an affirmative defense. *Hendrickson v. Moses Lake Sch. Dist.*, 192 Wash.2d. 269, 284–85, 428 P.3d 1197 (2018) (citing RCW 4.22.005).

ORDER - 5

*also* Restatement (Third) of Torts: Apportionment of Liability § 7 cmt. M (2000) ("in a case involving negligent rendition of a service, including medical services, a factfinder does not consider any plaintiff's conduct that created the condition the service was employed to remedy."). To determine otherwise would violate the well-settled tort law principle that a tortfeasor takes the plaintiff as they find them. *See, e.g.*, *Buchalski v. Universal Marine Corp.*, 393 F. Supp. 246, 248 (W.D. Wash. 1975).

     c. Contributory Fault as to Plaintiff's Reporting of his Medical History

A patient may, in limited circumstances, be found contributorily at fault for failing to give accurate and complete information to a medical provider. 3 Modern Tort Law: *Liability and Litigation* § 24:126 (2d ed.) (May 2022 Update); 4 American Law of Torts, Section 15:16 (March 2022 update); 1 Comparative Negligence Manual § 1:11 (3d ed.) (January 2022 Update). But a key element of contributory fault is the foreseeability of harm; to be held liable under this theory, a person must "actually have been aware of or should have appreciated the risks involved and then failed to exercise reasonable and ordinary care for his or her own safety." *Id.*

There is no evidence in the record to suggest—and King County does not appear to argue—that Mr. Michelle gave *inaccurate* information to Dr. Higgs. Even their own liability expert witness agrees that the information he provided was accurate. *See* Dkt. # 92 at 14 ("Q: Any indication that Mr. Michelle provided an incorrect or inaccurate account of his medical history? A: Not what I read."). King County instead argues that Mr. Michelle was negligent because he provided *incomplete* information to Dr. Higgs. Dkt. # 83 at 7 ("King County claims a trier of fact may find him contributorily negligent for failing to disclose [the fact that he injected

ORDER - 6

his neck with a dirty needle in the days before his arrest] to King County personnel.").[2]  For this argument to succeed, as explained above, King County must provide evidence that Mr. Michelle knew or should have known of the potential connection between his neck pain and his intravenous drug use and then failed to disclose this information to his medical provider.

All evidence in the record suggests that Mr. Michelle did not know that his neck pain could have been related to his intravenous drug use.  Mr. Michelle was forthcoming about his drug use during his incarceration, and the King County medical staff were aware that he was a heroin user.  *See, e.g.*, Dkts. ## 84–1 at 2, 92 at 10.  But despite this, Dr. Higgs never questioned Mr. Michelle about the details of his drug use or otherwise indicated that it could have been connected to the pain in his neck, instead attributing his pain to a musculoskeletal injury and associated anxiety.  Dkt. # 84–1 at 6.  Mr. Michelle explains in his declaration that, as someone with no medical training, he did not know what was causing his neck pain but guessed that it may have been caused by a car accident several years earlier, his arrest several days prior, or a combination of both incidents.  Dkt. # 78 at 4, 6–7.

Although Defendants make the conclusory assertion that Mr. Michelle "knew or should have known" (Dkt. # 83 at 6) that the cause of his neck pain was likely his act of injecting his neck, they do not point to any evidence in the record to support this assertion.  They cite excerpts from Mr. Michelle's deposition where he states he generally understood that injecting his body

---

[2] Defendant's briefing states at one point that Mr. Michelle provided "misleading" information to medical staff because he attributed his neck pain to a car accident and/or to his recent arrest.  Dkt. # 83 at 4–5.  It is unclear whether they mean to argue that these statements were inaccurate or incomplete.  The Court finds that they were neither.  A layperson's inability to correctly diagnose himself does not constitute inaccurate or incomplete reporting of his medical history.  *See, e.g.*, *Jackson v. Axelrad,* 221 S.W.3d 650 (Tex. 2007) ("Doctors are paid for their expertise, so diagnosis will always be primarily their responsibility . . . in most cases an ordinary patient's failure to report the origin of pain will be no evidence of negligence"); *see also Morrison v. MacNamara,* 407 A.2d 555, 567 n. 11 (D.C. Cir. 1979) ("[B]ecause of the doctor's ability to understand and interpret medical matters, the doctor generally owes a greater duty to his patient than the patient owes to himself.").

ORDER - 7

with used needles could result in "catch[ing] diseases" and "get[ting] sick." Dkt. # 84–2 at 12. Mr. Michelle also acknowledged that he knew people could get infections this way and that he had experienced infections in the past. *Id.* at 9, 12. This evidence supports the contention that Mr. Michelle understood that using dirty needles was generally risky behavior. But it does not show that he knew or should have known that the specific pain he was feeling in his neck could have been related to his intravenous drug use.[3] Nor does it make logical sense that Mr. Michelle would speak openly about his heroin use during his incarceration (*See, e.g.*, Dkts. ## 84–1 at 2, 84–4 at 4, 92 at 10) but choose not to disclose a specific instance of injecting his neck if he knew it could have been relevant to the pain he was experiencing. *C.f.* Fed. R. Evid. 803(4) (exception to hearsay rule where "[a] statement . . . is made for—and is reasonably pertinent to—medical diagnosis or treatment; and . . . describes medical history . . ."); *United States v. Kootswatewa*, 893 F.3d 1127, 1132 (9th Cir. 2018) ("This hearsay exception reflects the view that . . . an individual seeking medical care is unlikely to lie about her medical history or symptoms because she knows that 'a false statement may cause misdiagnosis or mistreatment.'"); *McCormick on Evidence* § 277 (8th ed. 2022) (discussing "selfish treatment motivation"). Defendants also point to Mr. Michelle's statement in his deposition that he could not "definitively rule out the possibility that [he] or one of [his] cellmates discussed" a "possible connection between [his] neck pain and [his] drug use." Dkt. # 78 at 6. But this statement, where Mr. Michelle essentially acknowledges that he cannot prove a negative, is not evidence that such a conversation

---

[3] Mr. Michelle adds that, while he had experienced infections before, they always manifested as "big zit[s]" that were "bubbly and pussy." Dkt. # 78–1 at 7. These symptoms are markedly different from the pain that he felt "deep in [his] neck" during his incarceration, Dkt. # 78 at 4, further refuting Defendants' implied assertion that Mr. Michelle's experience with infections in the past would have caused him to make the connection between his intravenous drug use and his neck pain.

ORDER - 8

occurred.[4]  Lastly, even the medical experts here are unable to say with certainty that Mr. Michelle's intravenous drug use caused his neck infection.  *See, e.g.*, Dkts. ## 84–3 at 4, 92 at 54–55.  Thus, King County's argument—with no supporting evidence in the record—that a layperson with no medical training should have made this medically speculative connection and known to tell King County medical staff as such fails.

The cases that Defendant cites in their Response are either distinguishable or inapplicable.  *Campbell v. Lake Reg'l Med. Mgmt., Inc.,* holds that a patient's "pre-treatment conduct and . . . medical conditions . . . cannot be the basis for the jury to apportion fault . . . for any injury caused by [Defendants'] negligence under Missouri law." 2020 WL 4741914 *6 (W.D. Mo. Aug. 14, 2020) (internal citations omitted).  As discussed above, King County does not appear to argue that Mr. Michelle was negligent based on his pre-treatment conduct or preexisting medical conditions.  Dkt. # 83 at 7.  Further, even if they did, the holding of *Campbell* would actually support Mr. Michelle's argument.  Defendant also cites *Skar v. City of Lincoln, Neb,* but that case is distinguishable.  In *Skar,* the court held that contributory negligence was properly submitted to the jury when the plaintiff "gave materially false and misleading information about himself, and failed to give virtually any truthful information about his medical history, family history and next of kin when requested to do so."  599 F.2d 253, 260 (8th Cir. 1979).  In contrast, there is no evidence that Mr. Michelle gave such deceptive information to the King County medical staff.

---

[4] Defendant also cites to a portion of Mr. Michelle's deposition when he is asked, "Did you tell anyone with King County that you had injected yourself in the neck with a needle that may have had blood on it?" Dkt. # 84–2 at 15–16.  He responds by stating, "Why give up personal information to a complete stranger?" *Id.* at 16.  This answer, when taken in context, actually supports Mr. Michelle's argument because it reveals that—given his understanding at the time that the details of his intravenous drug use did not relate to his neck pain—he would have no reason to volunteer this information.  And, as discussed above, all the evidence suggests that Mr. Michelle was forthcoming with King County medical staff about his drug use and other medical history, and the only reasons he did not disclose the fact that he had injected himself in the neck in the days before his arrest was because he was not asked and did not know these details were pertinent.

ORDER - 9

This case more resembles a Missouri Court of Appeals case cited in *Campbell*. In *Gray v. Brock,* the Plaintiffs pursued a wrongful death action against physicians for failure to order a nasogastric tube or tracheostomy for the decedent to prevent aspiration of gastric contents, which aspiration caused the decedent's death. 750 S.W.2d 696, 697 (Mo. Ct. App. 1988). The decedent's physician had treated him for his diabetes and instructed him that fatality can occur when the blood sugar elevates, evidenced by increased urine output and thirst, eventually leading to a coma. *Id.* at 698. On appeal, the plaintiffs contested the trial court's instructing the jury to attribute a percentage of fault to the decedent if he knew that his diabetes was "out of control" in the days just before his hospitalization and yet failed to seek medical attention, causing or contributing to his death. *Id.* at 700. The *Gray* court reviewed the record and found that there was insufficient evidence to support the trial court's instruction, because there was no indication that the decedent knew his symptoms of increased fluid intake and urination were attributable to activation of his diabetes, rather than the flu. *Id.* This case resembles *Gray* because there is no indication in the record that Mr. Michelle knew his symptoms (neck pain) were attributable to his intravenous drug use rather than his car accident or arrest. *See generally* Dkt. Therefore, as in *Gray,* submitting contributory fault to a jury would be inappropriate here.

2. Defendant's Motion to Strike

In its Response to Plaintiff's Motion for Summary Judgment, Defendant moves to strike an email from King County JHS medical director Benjamin Sanders to Dr. Higgs. Dkt. # 83 at 9 (referencing Dkt. # 77–1). They argue that it is irrelevant because it purports to go to Dr. Higgs's negligence, rather than Mr. Michelle's negligence. *Id.* They also argue that Plaintiff has failed to properly authenticate the email. *Id.* (citing *Wilborn v. CarMax Superstores Cal., LLC,* 2017 WL 6940653 (C.D.Cal. 2017)). King County also moves to strike portions of Michelle's motion for partial summary judgment quoting the Sanders-Higgs email for the same reasons. *Id.*

ORDER - 10

(referencing Dkt. # 76 at 11–12).  Lastly, King County moves to strike references to the same evidence in Dr. Olugbenja Ojo, M.D.'s expert report and the attached appendix.  *Id.* (referencing Dkt. # 79–1 at 21–22, 38–41).

    The Court denies this motion without prejudice.  These portions of the record did not affect the Court's analysis on the issue of summary judgment.  Should Defendant wish to object to the admissibility of these documents at a later stage, they may do so.

    Dated this 26th day of October, 2022.

*[signature: John H. Chun]*

John H. Chun
United States District Judge